# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**CHRISTINE M. BRIGGS,**

      Plaintiff,

**v.**                        **CIVIL ACTION NO.: 3:15-CV-24 (GROH)**

**NATIONSTAR MORTGAGE LLC and**
**NEWCASTLE MORTGAGE SECURITY**
**TRUST 2006-1,**

      Defendants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND

Currently pending before the Court is Plaintiff Christine M. Briggs' Motion to Remand [ECF 5] this case to the Circuit Court of Berkeley County, West Virginia. For the following reasons, the Court **DENIES** this motion.

### I. Background

On September 29, 2005, Briggs entered into a note for a loan to purchase a home. Newcastle Mortgage Security Trust 2006-1 ("Newcastle") owns the note, which Nationstar Mortgage, LLC ("Nationstar") services on behalf of Newcastle. Nationstar agreed to a trial modification of the loan. The trial modification required Briggs to pay $1,238.82 on January 1, February 1 and March 1 of 2014. Nationstar stated that, after Briggs timely made these payments, it would send her an agreement with the terms of the modified loan.

On January 1, 2014,[1] Briggs attempted to make a payment on Nationstar's website. The website would not allow her to do so. She called Nationstar several times that day, but got a recording and could not make the payment through Nationstar's automated system.

---

[1] From this point forward, all dates in this section refer to the year 2014 unless otherwise noted.

On January 2, Briggs called Nationstar and made a payment over the telephone. Nationstar withdrew $1,238.82 from her bank account that day and credited $1,227.04 toward interest and escrow. On February 1, Briggs made another telephone payment after she could not do so online. Nationstar withdrew $1,236.99 from her bank account on February 4, crediting $1,227.04 toward interest and escrow.

On March 1, Briggs tried to make her mortgage payment online and could not do so. Briggs called Nationstar approximately ten times that day to make her payment and left a message for a Nationstar agent. On March 2, Briggs called Nationstar five more times, but only received a recorded message. Briggs called Nationstar ten more times on March 3. On the tenth call, Briggs reached a Nationstar agent. Briggs told the agent that she could not make payments online. The agent responded that he could not accept a payment because she had not made the February 2014 payment. Briggs stated she had done so over the telephone. The agent asserted that the February 2014 payment was $8.00 short. Briggs told the agent she had authorized Nationstar to deduct the full monthly payment from her bank account and instructed him to add the $8.00 to her March payment. The agent responded that he could not do that or anything else regarding her account. He suggested that Briggs contact Lauren in a foreclosure office. Briggs called Lauren and left her a message. Another Nationstar agent, April, returned her call. Briggs told April about her attempts to pay her mortgage. April responded that she would open a case, contact Lauren and get back to Briggs. April never called Briggs back.

Thereafter, Briggs sent Nationstar a check for $1,265.00 for the March 1 payment. Nationstar then sent Briggs a series of letters concerning her account.

First, in a letter dated March 31, 2014, Nationstar returned the check to Briggs and

stated it was doing so as the funds were "insufficient to bring [her] account current." The letter further provided that Briggs needed to pay $12,146.00 to bring her account current. Next, in a letter to Briggs' counsel dated April 12, 2014, Nationstar stated:

> On February 1, 2014, funds for $1,227.04 were received and applied to [plaintiff's] account. A fee of $9.95 was assessed to the account due to Ms. Briggs' utilizing the Internal Voice Response (IVR), to schedule a payment. Because the payment received on February 1, 2014 was not enough to complete the second trial period payment it was applied to the suspense account.

By letter dated April 17, 2014, Nationstar stated that Briggs was in default and needed to pay $13,351.56 to bring her account current. In a letter dated May 5, 2014, Nationstar informed Briggs her account "had unapplied funds in suspense for an extended period of time" and gave her a check for $11.78. Finally, Briggs received a Notice of the Consumer's RIght to Cure Default dated June 11, 2014. This notice stated that, to bring her account current, Briggs needed to pay $28,450.55, which included "5 months X $2,046.55 payments & 9 months X $2,024.20 payments."

Based on the foregoing allegations, Briggs initiated this case on July 3, 2014 by filing a complaint against Nationstar and Newcastle in the Circuit Court of Berkeley County, West Virginia. Her complaint raises four claims for relief. These claims are not labeled, but a review of their allegations reveals what they are.

There are two breach of contract claims. Respectively, they allege the Defendants breached the agreement to modify the loan and the deed of trust underlying the loan. The remaining two claims allege violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). The first claim arises under the WVCPPA's unfair and deceptive trade practices provisions. It alleges the "Defendants' actions with regard to plaintiffs' mortgage

3

loan account are unfair and deceptive practices prohibited by W. Va. Code § 46A-6-104." The second claim alleges the following actions of the Defendants violated the WVCCPA's debt collection provisions:

> 86. Each of defendants' assessments of fees for accepting payments from plaintiff is the collection or attempt to collect from the consumer all or any part of the debt collector's fee or charge for services rendered in violation of W. Va. Code § 46A-2-128(c).
>
> 87. The June 11, 2014 letter sent to plaintiff by Golden & Amos, PLLC, acting at the instruction of one or both defendants, violates W. Va. Code § 46A-2-127(d), as it is a false representation or implication of the character, extent or amount of a claim against a consumer.

The complaint does not contain a monetary demand. Instead, it demands actual damages, "damages of no less than $200.00 per violation for damages suffered by plaintiff as a result of defendants' unfair and deceptive practices," a permanent modification of the loan, "actual and statutory damages for each of defendants' violations of the debt collection provisions of the [WVCCPA]," costs and attorneys' fees.

On February 19, 2015, the parties attended mediation. During mediation, Briggs demanded more than $75,000 to settle the case. On March 5, 2015, the Defendants removed this case to this Court, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. Their notice of removal asserted that removal was timely because they had removed it within thirty days of receiving Briggs' settlement demand, the first time they knew the amount in controversy exceeded $75,000 as § 1332 requires for this Court to have diversity jursidiction.

On March 10, 2015, the Court entered an order directing the Defendants to file an amended notice of removal because it was unclear whether this Court had subject matter jurisdiction. The Defendants filed an amended notice of removal addressing that issue.

4

On March 31, 2015, Briggs filed the instant motion to remand. She argues removal was untimely because the complaint revealed that the amount in controversy exceeded $75,000, and the Defendants therefore needed to remove this case within thirty days of receiving the complaint. She alternatively argues that the Defendants have not shown complete diversity of citizenship exists, another requirement of diversity jurisdiction under § 1332. Finally, Briggs seeks an award of attorneys' fees on the ground that the Defendants lacked an objectively reasonable basis for removal.

The Defendants counter that the complaint was not removable because it did not adequately reveal that the amount-in-controversy requirement was met. They assert that this matter first became removable when they received Briggs' settlement demand on February 19, and that their notice of removal was timely filed on March 5. The Defendants also argue diversity jurisdiction is proper because complete diversity of citizenship exists.

## II. Applicable Law

A defendant may remove a case involving diversity of citizenship under 28 U.S.C. § 1332 from state to federal court. See 28 U.S.C. § 1441(a). Generally, a defendant must file a notice of removal within thirty days of receiving the initial pleading. Id. § 1446(b)(1). But, "if the case stated by the initial pleading is not removable," a defendant may remove a case "within 30 days after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Id. § 1446(b)(3). The term "other paper" includes settlement demands. Dijkstra v. Carenbauer, Civil Action No. 5:11CV152, 2012 WL 1533485, at *3 (N.D.W. Va. May 1, 2012).

The removing party has "[t]he burden of establishing federal jurisdiction." Mulcahey

v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). Federal courts strictly construe removal jurisdiction. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941). Thus, "[i]f federal jurisdiction is doubtful, a remand is necessary." Mulcahey, 29 F.3d at 151. Conversely, if this Court has jurisdiction, it must exercise it. See Gum v. Gen. Elec. Co., 5 F. Supp. 2d 412, 415 (S.D.W. Va. 1998) ("It is well-established federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'").

When removal is based on diversity of citizenship, a defendant must establish that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a). Complete diversity of citizenship is required, i.e., the citizenship of the plaintiff must be diverse from the citizenship of each defendant. Cent. W. Va. Energy Co. v. Mt. State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011). In addition, when considering a motion to remand, a court determines whether it has jurisdiction by "look[ing] at the case as of the time it was filed in state court." Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 390 (1998).

### III. Discussion

The first issue before this Court is whether removal was timely, which depends on whether the complaint was removable. If removal was timely, the Court must then address whether complete diversity of citizenship exists.

**A.    Timeliness of Removal**

In Lovern v. General Motors Corp., 121 F.3d 160 (4th Cir. 1997), the Fourth Circuit adopted the following test for determining when a defendant could first ascertain a case is removable:

[W]e will not require courts to inquire into the subjective knowledge of the

6

> defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when. Rather, we will allow the court to rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper.

Thus, the timeliness of removal hinges on whether the Defendants could have established the amount-in-controversy requirement if they removed this case based on the complaint. The Court therefore finds it instructive to review the standard the Defendants would have needed to meet to do so.

When, like here, the complaint does not plead a specific dollar amount, a defendant must establish the jurisdictional amount by a preponderance of the evidence. See Marshall v. Kimble, Civil Action No. 5:10-CV-127, 2011 WL 43034, at *2 (N.D.W. Va. Jan. 6, 2011); Allman v. Chancellor Health Partners, Inc., Civil Action No. 5:08-CV-155, 2009 WL 514086, at *1 (N.D.W. Va. Mar. 2, 2009). This standard requires that a defendant "show that it is more likely than not that the amount in controversy exceeds the jurisdictional amount." Heller v. TriEnergy, Inc., Civil Action No. 5:12-CV-45, 2012 WL 2740870, at *9 (N.D. W. Va. July 9, 2012). "[A] bare allegation that the amount in controversy exceeds $75,000" does not suffice. Id. Rather, the defendant "must supply evidence to support his claim regarding the amount at issue." Id. (internal quotation marks and citation omitted).

A court determines the amount in controversy by "considering the judgment that would be entered if the plaintiff prevailed on the merits of his case at the time of removal." Id. A court also may engage in an independent evaluation to determine whether the amount in controversy has been met, and the court may look to the entire record before it. Mullins v. Harry's Mobile Homes, Inc., 861 F. Supp. 22, 23 (S.D.W. Va. 1994) (finding

7

jurisdictional amount met through a common sense evaluation of the record although the complaint did not state a specific dollar amount of damages).

In this case, Briggs argues that the WVCCPA claims revealed that the amount-in-controversy requirement was met.

First, Briggs argues that she alleged thirteen violations of the WVCCPA's debt collection provisions, which, at $4,800 of statutory damages available for each violation,[2] revealed that this claim sought up to $62,400. Briggs maintains that her complaint raised twelve violations for charging her $9.95 for accepting payments and one violation for misrepresenting her debt in the June 11, 2014 letter. Briggs asserts that, although the complaint does not identify the number of violations based on the fee assessments, the Defendants knew twelve such violations are at issue because their records stated the number of times they had assessed the fee.

Next, Briggs argues that the unfair and deceptive practices claim sought up to $32,326.56 in actual damages based on Nationstar rejecting her mortgage payments from March 1, 2014 onward. Briggs states that her complaint alleges returning her check for the March 1, 2014 payment led the Defendants to declare her $13,351.56 in arrears. She asserts that this arrearage plus fifteen $1,265.00 payments that the Defendants have refused to accept total $32,326.56 in actual damages. Finally, Briggs argues that her claim for attorneys' fees further showed that the jurisdictional amount was met.

The Defendants respond that the complaint was not removable because it did not state the total damages sought or identify the nature and number of WVCCPA violations.

---

[2] The Defendants do not contest that Briggs could receive this amount for each violation.

8

In particular, they argue that the debt collection claim does not allege that the $9.95 fee was improper. The Defendants further assert that, even if it had, they had no obligation to search their records to speculate as to the number of violations at issue. Finally, the Defendants maintain that, because they could only speculate regarding the WVCCPA violations, it appeared that Briggs sought damages much lower than she now claims and, by extension, potential attorneys' fees minimally increased the amount in controversy.

Here, the complaint at most reveals that Briggs sought statutory damages for two violations of the WVCCPA's debt collection provisions. The debt collection claim does allege that the assessment of fees for accepting payments and representations made in the June 11, 2014 letter violated the WVCCPA. The letter arguably is one alleged violation of the WVCCPA. This claim does not, however, indicate that Briggs is alleging that twelve fee assessments are at issue. The complaint neither specifies the type of fee that Briggs claims violated the WVCCPA nor the number of times the Defendants assessed such fees. At most, the allegation that the Defendants stated in a letter that they had charged Briggs $9.95 for the February 1, 2014 payment could be construed as a fee assessment underlying this claim. As Briggs would have it, this single allegation obligated the Defendants to search their records to elucidate that Briggs truly sought to recover for all of the $9.95 fees charged to her account. But, under <u>Lovern</u>, the face of the complaint controls, and the complaint lacks any such allegations. Moreover, had the Defendants removed this case based on the complaint, the Court would have needed to speculate to find that this claim alleged enough violations to near the jurisdictional amount as Briggs would now have the Court find. Such speculation would be improper as courts must strictly construe removal jurisdiction. See <u>Judy v. JK Harris & Co.</u>, Civil Action No.

2:10-CV-01276, 2011 WL 4499316, at *7 (S.D.W. Va. Sept. 27, 2011) (declining to increase amount in controversy based on statutory penalties for WVCCPA claim where there was no evidence as to the number of violations alleged). Accordingly, the complaint revealed a likely statutory damages award of no more than $9,600.

As for the unfair and deceptive practices claim, the complaint alleges only that the "Defendants' actions with regard to plaintiffs' mortgage loan account are unfair and deceptive practices." There is no indication that Briggs was claiming that the rejected mortgage payments damaged her. Because the complaint does not clarify the violations underlying this claim, this claim does not increase the amount in controversy. See id.

Finally, attorneys' fees are available for WVCCPA claims and, therefore, can increase the amount in controversy. Jefferson v. Quicken Loans, Inc., Civil Action No. 5:13CV59, 2013 WL 3812099, at *2 (N.D.W. Va. July 19, 2013); see also Judy, 2011 WL 4499316, at *4 (including plaintiff's undisputed estimate that she would incur $25,000 in attorneys' fees in amount-in-controversy calculation). "Under West Virginia law, for certain types of conduct 'the court *may* award all or a portion of the costs of litigation, including reasonable attorney fees,' but is not required to do so." Jefferson, 2013 WL 3812099, at *2 (quoting W. Va. Code § 46A-5-104). In addition, the Supreme Court of Appeals of West Virginia has held that courts may only award reasonable attorneys' fees after analyzing the following twelve factors for reasonableness:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the

10

professional relationship with the client; and (12) awards in similar cases. Vanderbilt Mortg. & Fin., Inc. v. Cole, 740 S.E.2d 562, 572 (W. Va. 2013) (quoting Syl. Pt. 4, Aetna Casualty & Surety Co. v. Pitrolo, 342 S.E.2d 156 (W. Va. 1986)).

Here, to reach the jurisdictional amount, the complaint would need to reveal that it was more likely than not that Briggs would recover at least $65,401 in attorneys' fees ($75,001 less the $9,600 sought for the WVCCPA claims). The potential amount of attorneys' fees, however, does not rise to that level because they are merely speculative on the face of the complaint. See Jefferson, 2013 WL 3812099, at *2. There is no guarantee Briggs would receive attorneys' fees as they are within the Court's discretion to award at all. See id. Even if the Court awarded them, the amount of the award is unpredictable because it depends on factors that the Court has no evidence or argument concerning now, let alone when Briggs filed her complaint. See id. Thus, because potential attorneys' fees are unpredictable in WVCCPA cases and there is no evidence regarding them, the attorneys' fees apparent from the complaint do not cause the amount in controversy to reach the jurisdictional threshold. See id. (finding potential attorneys' fees for WVCCPA claim did not increase amount in controversy by $20,000 to reach jurisdictional threshold as defendants failed "to provide adequate competent evidence regarding potential attorney fees" and fees were unpredictable). Accordingly, the Defendants timely removed this case within thirty days of receiving Briggs' settlement demand because that was when they could first ascertain that the amount in controversy exceeded $75,000. See 28 U.S.C. § 1446(b)(3).

**B.    Diversity of Citizenship**

Having found that removal was timely, the Court considers whether it has diversity

jurisdiction. The parties dispute only whether complete diversity of citizenship exists. This issue hinges on the citizenship of Nationstar and Newcastle because the parties agree that Briggs is a citizen of West Virginia.

Nationstar is a limited liability company ("LLC"). An LLC's citizenship "is determined by the citizenship of all of its members." Cent. W. Virginia Energy Co., 636 F.3d at 103. The amended notice of removal states that Nationstar's managing members are domiciled in Texas. Nationstar also has produced an affidavit averring that its managing members are two individuals, Jay Bray and Robert D. Stiles of Texas. Thus, their citizenship determines Nationstar's citizenship.

An individual is a citizen of the state in which he is domiciled. Johnson v. Advance Am., 549 F.3d 932, 937 n.2 (4th Cir. 2008). "Domicile requires physical presence, coupled with an intent to make the State a home." Id. Courts determine domicile on a case by case basis, considering all of the circumstances surrounding an individual's situation. 13E Charles Alan Wright et al., Federal Practice and Procedure § 3612 (3d ed. 2013). They may consider the following factors in doing so, with no one factor being dispositive: "the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; [and] payment of taxes." Wright el al., *supra*, § 3612.; see also Ronald Lane, Inc. v. Antero Res. Appalachian Corp., Civil Action No. 1:10CV137, 2011 WL 3102116, at *4 (N.D.W. Va. July 25, 2011).

Here, it is undisputed that Nationstar's members reside in Texas. There is no evidence tying them to West Virginia so as to defeat diversity jurisdiction. Accordingly, for

12

diversity purposes, Nationstar's members are citizens of Texas and, by extension, Nationstar is a citizen of Texas. See Cent. W. Virginia Energy Co., 636 F.3d at 103.

Next, Newcastle is a trust. Neither the Supreme Court nor the Fourth Circuit have addressed how courts determine the citizenship of a trust, and there is a split of authority on the issue. Per the Third Circuit's decision in Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192 (3d Cir. 2007), courts have developed four approaches to determine a trust's citizenship:

> (a) look to the citizenship of the trustee only; (b) look to the citizenship of the beneficiary only; (c) look to the citizenship of either the trustee or the beneficiary depending on who is in control of the trust in the particular case; or (d) look to the citizenship of both the trustee and the beneficiary.

LBR Holdings, LLC v. Poulos, 995 F. Supp. 2d 567, 569 (S.D.W. Va. 2014) (quoting Emerald Investors Trust, 492 F.3d at 201).

Here, the amended notice of removal states that the trustee of Newcastle is Bank of New York Mellon, which is incorporated in New York with a principal place of business in New York, and the beneficiary of Newcastle is Wilmington Trust Company, which is incorporated in Delaware with a principal place of business in Delaware. The Defendants have provided a declaration from Nationstar's Vice President that also asserts that is the case. Because the trustee and beneficiary are corporations, they are citizens of every state in which they are incorporated and the state of their principal place of business. 28 U.S.C. § 1332(c)(1). Thus, the undisputed evidence shows that the trustee is a citizen of New York and the beneficiary is a citizen of Delaware. Because the trustee and beneficiary are both citizens of a state other than West Virginia, Newcastle is diverse from Briggs under all possible methods of determining citizenship of a trust. The Court therefore need not

13

decide which approach to follow because the outcome of this case is the same regardless. Accordingly, because Briggs is a citizen of West Virginia and the Defendants are citizens of Texas, New York and Delaware, complete diversity of citizenship exists and this Court has diversity jurisdiction over this matter.

As a final matter, the Court denies Briggs' request for attorney's fees. Because removal was proper, the Defendants had "an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Plaintiff's Motion to Remand.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** May 15, 2015

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE

14