# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**CHRISTINE M. BRIGGS,**

    Plaintiff,

v.                                                                **CIVIL ACTION NO.: 3:15-CV-24**
                                                                          **(GROH)**

**NATIONSTAR MORTGAGE, LLC,**
**and NEWCASTLE MORTGAGE**
**SECURITY TRUST 2006-1,**

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

Currently pending before the Court is the Defendants' Motion to Compel Arbitration, filed on July 8, 2015. ECF No. 18. For the reasons set forth below, the Court **GRANTS** this motion.

### I. Background

On September 29, 2005, the Plaintiff entered into an adjustable rate note for a loan in order to purchase a home. The note is owned by Newcastle Mortgage Security Trust 2006-1 ("Newcastle"). Nationstar Mortgage, LLC, ("Nationstar") services on behalf of Newcastle.

In late 2013, Nationstar agreed to a trial modification of the Plaintiff's loan. The trial modification required the Plaintiff to pay $1,238.82 on the first of the month for the months of January, February and March of 2014. Nationstar agreed that if the Plaintiff

made timely payments during these months that it would send her an agreement with the terms of the modified loan.

During the months of January, February and March of 2014, the Plaintiff had difficulty paying her mortgage online and via Nationstar's automated phone system. Nationstar withdrew $1,238.82 from the Plaintiff's bank account in January and $1,236.99 in February.[1] In March, after making numerous calls to Nationstar to try and make a payment, the Plaintiff reached an agent. During this call, the agent informed the Plaintiff that he was not able to accept a payment from her for the month of March because she had failed to make an adequate payment in February.[2] The Plaintiff was then redirected to another agent who said that she would open a case on behalf of the Plaintiff regarding her mortgage payments. The agent informed the Plaintiff that she would call back after discussing the matter with yet another agent. The Plaintiff never heard back from any agent, and heard nothing further about the opening of a case on her behalf. After failing to receive any notification, the Plaintiff sent Nationstar a check for $1,265.00 for her March mortgage payment.

Thereafter, beginning on March 31, 2014, Nationstar began sending the Plaintiff letters notifying her that she was in default on her mortgage payments.[3] Nationstar sent the Plaintiff letters in March, April and May of 2014.[4] Then, in a letter dated June 11,

---

[1] In January and February of 2014, Nationstar credited $1,227.04 of the Plaintiff's payments toward interest and escrow.

[2] The Plaintiff authorized Nationstar to charge her bank account for the full amount of her February 2014 mortgage payment. However, the agent stated that the Plaintiff's February mortgage payment was $8.00 short.

[3] The initial letter from Nationstar to the Plaintiff was dated March 31, 2014. This letter contained the Plaintiff's March 2014 check for $1,265.00. Nationstar stated that it was returning the check because the funds were "insufficient to bring [the Plaintiff's] account current." The letter further informed the Plaintiff that she needed to pay $12,146.000 to bring her account current.

[4] The letter from Nationstar to the Plaintiff dated April 12, 2014, stated that Nationstar received a payment from the Plaintiff on February 1, 2014, in the amount of $1,227.04. The letter also stated that the Plaintiff

2

2014, the Plaintiff received a "Notice of the Consumer's Right to Cure Default." The notice was sent from Golden & Amos, PLLC, and stated that the Plaintiff was in default on her mortgage payments and owed Nationstar $28,450.55.

As a result of the above letters from Nationstar and the "Notice of the Consumer's Right to Cure Default" from Golden & Amos, PLLC, the Plaintiff filed a complaint against Nationstar and Newcastle on July 3, 2014, in the Circuit Court of Berkeley County, West Virginia. The case was later removed to this Court on March 5, 2015.

In her complaint, the Plaintiff alleges that the Defendants "breached the agreement to provide a permanent modification for plaintiff's home mortgage loan," engaged in "unfair and deceptive practices," "breached the Deed of Trust by failing to apply sums received . . . in the manner required," and falsely represented the "amount of a claim against a consumer."[5] ECF No. 1-1 at 13-14.

On July 8, 2015, the Defendants filed a motion to stay discovery and a motion to compel arbitration.[6] ECF Nos. 20 and 18. The Defendants' Motion to Stay Discovery requested the Court to stay discovery pending a ruling on the Defendants' Motion to Compel Arbitration. In their Motion to Compel Arbitration, the Defendants argue that the Plaintiff's filing of the underlying suit is in violation of a binding arbitration agreement. The

---

owed a $9.95 fee for using Nationstar's Internal Voice Response system to make that payment. The letter from Nationstar to the Plaintiff dated April 17, 2014, stated that the Plaintiff was in default in the amount of $13,351.56. The letter from Nationstar to the Plaintiff dated May 5, 2015, stated that the Plaintiff "had unapplied funds in suspense for an extended period of time," and included a check to the Plaintiff for $11.78.

[5] The Plaintiff's allegations that the Defendants "breached the agreement to provide a permanent modification for plaintiff's home mortgage loan," and "breached the Deed of Trust by failing to apply sums received . . . in the manner required," are breach of contract claims. The other two claims allege violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). Specifically, the Plaintiff alleges violations of § 46A-6-104, § 46A-2-128(c), and § 46A-2-127(d).

[6] The Defendants also filed a Motion for Leave to File an Amended Answer to Complaint on this day.

Defendants assert that any uncertainty as to whether or not a particular issue is subject to arbitration should be resolved in favor of arbitration.

In response, on July 23, 2015, the Plaintiff filed Plaintiff's Opposition to Defendants' Motion to Compel Arbitration. ECF No. 24. In her response, the Plaintiff asserts that the claims alleged in the original complaint are disputes that are, as identified in the arbitration agreement, excluded from the scope of arbitration. The Plaintiff urges the Court to interpret the arbitration agreement through common law contract principles.

Following the Plaintiff's response, the Defendants filed their Reply to Response to Motion to Compel Arbitration. ECF No. 25. In their reply, the Defendants argue that the arbitration agreement between the parties may be interpreted to include the claims alleged in the Plaintiff's complaint and, therefore, the Court must grant the Defendants' request for arbitration.

## II. Applicable Law

It is well settled that "the interpretation of an arbitration agreement is generally a matter of state law . . . ." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 681 (2010). A federal court sitting in diversity interprets the language and meaning of an arbitration agreement according to state law. See Adkins v. Labor Ready, Inc., 303 F.3d 496, 501 (4th Cir. 2002). Specifically, "[w]hether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." Id. (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

However, federal courts must also pay heed to the law set forth in the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1-16 (2015). The FAA applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a

controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . ." Id. at § 2. The FAA favors arbitration of disputes. Adkins, 303 F.3d at 500. This policy of favoring arbitration reflects "Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." Id. (citing Hightower v. GMRI, Inc., 272 F.3d 239, 241 (4th Cir. 2001)). In fact, the inclination toward arbitration is so strong that "when the scope of an arbitration clause remains 'open to question' regarding the inclusion of a particular issue, a court *must* declare that the issue is subject to arbitration." Great Am. Ins. Co. v. Hinkle Contracting Corp., 497 F. App'x 348, 352 (4th Cir. 2012) (citing Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989)) (emphasis added).

Under the FAA,

> a litigant can compel arbitration . . . if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [the other party] to arbitrate the dispute.

Adkins, 303 F.3d at 500-01 (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)) (internal quotations omitted).

### III. Analysis

In the Plaintiff's Opposition to Defendants' Motion to Compel Arbitration, the Plaintiff fails to raise any issue with the validity of the arbitration agreement as a binding, enforceable contract. The Plaintiff asserts only that the claims set forth in her complaint do not constitute "disputes" as defined by the arbitration agreement. Although not

presently in dispute, the Court finds the arbitration agreement in this case to be a valid and enforceable contract.

A contract is considered legally enforceable where there are "competent parties, legal subject matter, valuable consideration and mutual assent." Dan Ryan Builders, Inc. v. Nelson, 230 W. Va. 281, 287 (2012) (quoting Syl. Pt. 5, Virginian Exp. Coal Co. v. Rowland Land Co., 100 W. Va. 559 (1926)). Consideration is defined as "some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another. A benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract." Id. (quoting First Nat'l Bank of Gallipolis v. Marietta Mfg. Co., 151 W. Va. 636, 642 (1967)) (internal quotations omitted). Under West Virginia law, if a contract "as a whole [is] supported by adequate consideration," then "a single clause within [that] contract does not require separate consideration." Dan Ryan Builders, 230 W. Va. at 283. Mutual assent may be demonstrated by unambiguous language of an agreement coupled with an acceptance of that agreement by means of signature. See New v. GameStop, Inc., 232 W. Va. 564, 572-73 (2013).

Here, there is no question that, at the time of its execution, both parties were legally competent to enter into the mortgage agreement. It is also indisputable that a mortgage agreement has legal significance. Consideration was also present at the agreement's execution, as the Plaintiff conferred a benefit by obtaining the loan, and the Defendants suffered a detriment by giving the loan to the Plaintiff. Finally, mutual assent existed between the parties as evidenced by the signed mortgage agreement. Further, the Court finds no evidence that would render the mortgage agreement in this case unenforceable

due to unconscionability. Therefore, because all four elements of an enforceable contract exist as to the mortgage agreement, the arbitration agreement contained within the mortgage agreement is an enforceable contract.

For the Defendants to compel arbitration, they must demonstrate the following:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [the other party] to arbitrate the dispute.

Adkins, 303 F.3d at 500-01 (quoting Whiteside, 940 F.2d at 102) (internal quotations omitted). The Defendants have demonstrated all four elements under the FAA to compel arbitration.

First, there is a dispute between the parties. The Plaintiff initially filed suit against the Defendants in Berkeley County Circuit Court asserting two breach of contract claims and two violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). As of today, the case remains active on this Court's docket.

Second, the Defendants have demonstrated that "a written agreement that includes an arbitration provision which purports to cover [this] dispute" exists. Id. The Defendants attached the arbitration agreement to their Motion to Compel Arbitration. The relevant portion of the arbitration agreement reads as follows:

> [A] "**Dispute**" is any case, controversy, dispute, tort, disagreement, lawsuit or claim now or hereafter existing between [the Plaintiff] and [the Defendants]. A Dispute *includes*, but is not limited to, anything that concerns: this Agreement; any Credit Transaction including, but not limited to, the origination or servicing of such Credit Transaction; any modification, extension or renewal of any Credit Transaction; any past, present or future insurance, service or product that is offered in connection with a Credit Transaction; any

7

> documents or instruments that contain information about any Credit Transaction, insurance, service or product; and any act or omission by any of [the Defendants] regarding any claim. A Dispute ***does not include***: any action to effect a foreclosure; any action to obtain possession of any property securing the Credit Transaction; any action for prejudgment injunctive relief or appointment of receiver(s); and any claim where [the Defendants] seek collection of the debt created under the Credit Transaction because of [the Plaintiff's] default under the terms of the Credit Transaction.
>
> [The Plaintiff] and [the Defendants] agree that if any Dispute arises, either [the Plaintiff] or [the Defendants] may choose to have the Dispute resolved by binding arbitration.

ECF No. 18-1 (emphasis added).

The Plaintiff's complaint alleges that the Defendants "breached the agreement to provide a permanent modification for plaintiff's home mortgage loan," engaged in "unfair and deceptive practices," "breached the Deed of Trust by failing to apply sums received . . . in the manner required," and falsely represented the "amount of a claim against a consumer." ECF No. 1-1 at 13-14. It is clear that these claims are considered "disputes" under the arbitration agreement.

In order for the Plaintiff's claims to fall outside of the scope of "disputes," as they are defined in the arbitration agreement, the Plaintiff would have to show that either (1) the Plaintiff's action is an action against the Defendants to foreclose; (2) the Plaintiff's action is an action to obtain possession of property securing the Credit Transaction; (3) the Plaintiff's action is an action for prejudgment injunctive relief or appointment of receivers; or (4) the Plaintiff's action is an action to seek collection of a debt created under the Credit Transaction. See ECF No. 18-1. Here, the Plaintiff's claims do not fall under any of these four categories. Therefore, the Plaintiff's claims are disputes as defined under the arbitration agreement and, thus, subject to arbitration.

8

Moreover, even if it were unclear as to whether the Plaintiff's claims in her complaint constituted "disputes" as defined in the arbitration agreement, this Court would nevertheless be required to order this case to arbitration. See Great Am. Ins. Co., 497 F. App'x at 352.

Third, the arbitration agreement in dispute is related to interstate commerce. The United States Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003) (per curiam) (quoting Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 273-74 (1995)). The Supreme Court has further expressed that "the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce.'" Id. (internal quotation marks, citation, and emphasis omitted).

A mortgage agreement between parties of diverse citizenship most certainly affects interstate commerce. See, e.g., Citizens Bank, 539 U.S. 52. Therefore, the transaction at issue in this case is related to interstate commerce.

Finally, it is evident that the Plaintiff refuses to arbitrate this dispute. The Plaintiff's initial filing of this suit in state court, and her more recent filing of a motion in opposition to the Defendant's Motion to Compel Arbitration, clearly establishes the Plaintiff's refusal to arbitrate this case.

### IV. Conclusion

Accordingly, the Court **GRANTS** the Defendants' Motion to Compel Arbitration and **STAYS** all proceedings pending the completion of arbitration in this case.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record.

**DATED:** October 9, 2015

*[signature]*
GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE